## 67538. JOHNSON v. THE STATE.

QUILLIAN, Presiding Judge.

Defendant appeals his conviction for homicide by vehicle in the first degree in violation of OCGA § 40-6-393 (a), which provides: "Any person who, without malice aforethought, causes the death of another person through the violation of Code Section 40-6-390 [reckless driving] or 40-6-391 [driving under the influence] . . . commits the offense of homicide by vehicle in the first degree . . ."

The evidence authorized the jury to find that at about midnight October 31, 1981, defendant was driving east on state highway 120 (a two lane road) in his pickup truck under the influence of alcohol and at times was driving recklessly in the left or oncoming lane. The victim was riding in the front passenger's seat of a passenger car being driven west on the same road. When the driver thereof saw defendant's vehicle coming at her in her lane, she turned to the left towards a side road to avoid being hit by defendant's vehicle. At the same time defendant moved back into his proper lane and collided with the right side of the passenger car, causing the victim's death. *Held*:

1. In connection with causation, the trial court charged the jury that in order to find the defendant guilty they must first find beyond a reasonable doubt that he either drove recklessly or while under the influence of alcohol; and that if defendant was guilty beyond a reasonable doubt of either reckless driving or driving under the influ-

ence, in order to find defendant guilty of homicide by vehicle in the first degree they must then find beyond a reasonable doubt that by such driving he directly and proximately caused the death of the victim. The court then defined proximate cause at some length, to include the following: "[A]n injury or damage is proximately caused by an act or a failure to act whenever it appears from the evidence in the case that the act or omission played a substantial part in bringing about or actually causing the injury or damage and that the injury or damage was either a direct result or a reasonably probable consequence of the act or omission."

Defendant asserts the charge was error because it applied the civil action standard of proximate cause in a criminal prosecution, a lesser standard of proof than beyond a reasonable doubt required for criminal liability. It is also asserted that the words "substantial" and "reasonably probable" used in the charge definition of proximate cause also are not criminal standards.

The term and concept of proximate cause has been applied in vehicular homicide cases in this state for many years. *Cain v. State*, 55 Ga. App. 376, 381 (190 SE 371); *Brown v. State*, 152 Ga. App. 273, 274 (262 SE2d 497); *Deshazier v. State*, 155 Ga. App. 526 (7) (271 SE2d 664); *Loveless v. State*, 158 Ga. App. 535 (281 SE2d 311); *Beaman v. State*, 161 Ga. App. 129 (1) (291 SE2d 244). It is applied in many jurisdictions. 7A AmJur2d 510, Automobiles and Highway Traffic, § 325. In fact, defendant requested a charge which included proximate cause, a portion of which was the same language as the charge given. He did not object to the charge on proximate cause when given, and specifically requested that the charge on proximate cause be repeated when the jury was recharged on some other matters.

We find that proximate cause was properly applied and defined in this case.

Defendant's reliance on *State v. Crane*, 247 Ga. 779 (279 SE2d 695) for the definition of the statutory term "causes the death of" is misplaced. *Crane* was a felony murder prosecution in which the court found that where a homeowner shot and killed one of four persons burglarizing his home, the three remaining burglars were not responsible for the death under the felony murder statute as they did not directly cause the death. *Crane* is clearly inapposite to the instant case where there is no evidence of indirect causation and which involves construction of an entirely different statute.

2. In three enumerations defendant claims the trial court erred in preventing the jury from considering the actions of the driver of the car the victim was in, and in failing to give his requested charges on four statutes concerning driving on the right side of the road, passing oncoming traffic on the right, prohibiting driving in the left or

opposing lane within 100 feet of an intersection, and yielding to on-coming traffic when intending to make a left turn.

There was no instruction which prevented the jury from considering the conduct of the victim's driver. To the contrary, the court instructed in connection with the charge on defendant's asserted defense of emergency "that where a person is suddenly placed in peril by the negligence of another and in a situation where the emergency is so great that it is necessary for that person to act without having time to think, then a person confronted with such an emergency is not held to as strict accountability as a person who has ample time to consider the circumstances and the situation." This instruction could also be applied to the conduct of the other driver.

In addition, in connection with the charge on the lesser offense of vehicular homicide in the second degree, the court gave verbatim all of defendant's requested charge pertaining to driving on the right side of the road, passing oncoming cars on the right, and not driving in the opposing lane within 100 feet of an intersection. This was later repeated at the jury's request. The written request did not include any language specifically applying it to the other driver's conduct, nor was such application otherwise requested.

The only requested instruction not given was one to charge OCGA § 40-6-71 on the duty to yield to oncoming traffic when intending to make a left turn. This request was properly refused because there was no evidence that anyone was intending to turn left. The other driver's testimony was that she turned to the left only to avoid being hit head on by defendant who was coming towards her on the wrong side of the road and in her lane.

We find no merit in these enumerations.

3. The trial court did not err in charging that criminal negligence is applicable to vehicular homicide.

"A 'crime' is a violation of a statute of this state in which there is a joint operation of an act or omission to act and intention *or criminal negligence*." OCGA § 16-2-1. (Emphasis supplied.)

"The degree of negligence to be shown on indictment for manslaughter [vehicular homicide], where an unintentional killing is established, is something more than is required on the trial of an issue in a civil action. A want of due care, or a failure to observe the rule of a prudent man, which proximately produces an injury, will render one liable for damages in a civil action; but to render one criminally responsible there must be something more, culpable negligence, which under our law is criminal negligence, and is such recklessness or carelessness, resulting in injury or death, as imports a thoughtless disregard of consequences or a heedless indifference to the safety and rights of others and a reasonable foresight that injury would result." *Cain v. State*, 55 Ga. App. 376, 379-80, supra.

"[T]he violation of the safety statute regulating the use of highways does not constitute criminal negligence, unless such violation is intentional, wilful, or wanton, or unless the violation, though unintentional, is accompanied by recklessness or is under circumstances from which probable death or injury to others might be reasonably anticipated." Id. at 383.

4. When the police arrived at the scene of the collision a short time after it occurred, defendant identified himself as the driver of the pickup, was observed to be staggering and glassy-eyed, and was put in the back of a police car where he went to sleep. A blood alcohol test later showed a .21 percent level, well over the .10 level of presumptive intoxication. After about one half hour, defendant was removed from the police car and advised of various rights. As he got back into the car, two officers heard him say "what is the commotion, it's just a nigger," or words to that effect. Defendant is white, the victim was black. In two enumerations defendant claims the admission of the remark was without proper foundation, was prejudicial and inflammatory and without probative value.

During the Jackson-Denno hearing the statement was shown to be spontaneously and voluntarily made. Nothing is presented to show that its admissibility lacked a proper predicate.

There is no question that the statement was prejudicial to the defendant. Most evidence offered by the state is prejudicial to a criminal defendant, but is admissible if it is relevant. " 'The Georgia courts have said many times that relevant evidence is not subject to an objection that it might inflame the minds of the jury or prejudice the jury and this is true even where the offered evidence is only cumulative . . . The Georgia rule favors the admission of any relevant evidence, no matter how slight its probative value.' [Cits.]" *Sprouse v. State*, 242 Ga. 831 (3), 833 (252 SE2d 173).

As a sober person normally would not be expected to make such a remark under the circumstances, and as inhibitions are removed by alcohol intoxication, the statement was relevant as bearing on defendant's intoxication, an issue vigorously contested by defendant. The trial court did not err in admitting it.

5. There is no merit in the enumeration that the trial court erred in allowing the state's accident reconstruction expert to give his opinion of matters outside the scope of his expertise.

In direct examination the expert was asked to give his opinion of how the collision occurred. Based upon the examination of the scene and the vehicles he related the physical movements of the vehicles and in doing so stated that the victim's car was "moving into the eastbound lane to avoid a collision." Upon defendant's objection, the trial court said: "I don't know how he could testify as to whether somebody was moving to avoid a collision based on what he stated he ob-

served." Whereupon, directed by the prosecuting attorney, the witness repeated the movements of the vehicles without making the statement objected to.

This exchange presents two possibilities. Either defendant's objection was sustained, which seems most probable, leaving nothing for him to complain about on appeal as he asked for no further relief. *Hightower v. State*, 137 Ga. App. 790 (4) (224 SE2d 842). Or the objection was not ruled upon, in which event the objection is deemed waived. *Sprague v. State*, 147 Ga. App. 347 (3) (248 SE2d 711); *Neal v. State*, 161 Ga. App. 77 (1) (289 SE2d 293).

6. There was no harmful error in the initial exclusion of certain testimony from two witnesses as the information desired by defendant was supplied by the witnesses' subsequent testimony. *Freeman v. State*, 230 Ga. 85 (1) (195 SE2d 416).

7. As no objections or motions for mistrial were made concerning the trial court's alleged improper comments on the evidence, they may not be raised on appeal. *Driggers v. State*, 244 Ga. 160 (2) (259 SE2d 133).

8. It is claimed that the trial court improperly considered defendant's acquittal of a driving under the influence offense in imposing sentence.

Although the trial court was clearly aware that defendant had been so acquitted, there is nothing in the record to show that the court considered it in determining a sentence.

Absent a showing to the contrary a judge is presumed to consider only those matters which may be lawfully considered in determining a sentence. *Clark v. State*, 138 Ga. App. 266 (5) (226 SE2d 89); *Clark v. State*, 144 Ga. App. 33 (6) (240 SE2d 306).

9. Pretermitting whether the trial court erred in denying defendant a supersedeas bond pending appeal, the issue is moot because we affirm the conviction. *Lawson v. State*, 242 Ga. 744 (2) (251 SE2d 304).

10. Remaining allegations of error are either mooted by the foregoing or are not meritorious.

*Judgment affirmed. Birdsong and Carley, JJ., concur.*

DECIDED FEBRUARY 22, 1984 —
REHEARING DENIED MARCH 21, 1984 —

J. Milton Grubbs, Jr., for appellant.
*Thomas J. Charron, District Attorney, Debra Bernes, Assistant District Attorney*, for appellee.